Affirmed and Memorandum Opinion filed January 10, 2008








Affirmed and Memorandum Opinion filed January 10, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00536-CV

____________

 

THOMAS DUMLER and LESLIE DUMLER, Appellants

 

V.

 

QUALITY WORK BY DAVIDSON and
TRI-WAY ENTERPRISES, Appellees

 



 

On Appeal from the
County Civil Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 780,487

 



 

M E M O R A N D U M   O P I N I O N








Thomas Dumler and Leslie Dumler appeal from a judgment
awarding them actual damages of $3,000 for breach of contract and attorney=s fees of $10,000
against appellees Quality Work by Davidson (Quality Work) and Tri-Way
Enterprises (Tri-Way).[1] 
In three issues, the Dumlers complain that the trial court erred by conducting
the trial over a period of two years and two months, the award of attorney=s fees is
arbitrary and unreasonable, and the damages award is against the great weight
and preponderance of the evidence.  We affirm the trial court=s judgment.

                                     I.  Background

This appeal arises out of a construction contract between
the Dumlers and contractors Quality Work and Tri-Way.  In December 2001, the
Dumlers signed a remodeling contract with Quality Work for repairs and
renovations on their home.  Quality Work subcontracted with James Lupo of
Tri-Way to install marble tile in two bathrooms in the house_the powder room
and the master bathroom. 

The Dumlers paid Quality Work on a time and materials basis
as they received invoices until June of 2002, when the Dumlers noticed that
tile installed in the powder room had blistered.  Unhappy with the quality of
the tile installation, the Dumlers stopped making payments.  Kent Davidson,
owner of Quality Work, agreed the tile needed to be redone.  He told Mrs.
Dumler that if the Dumlers would buy the replacement tile, he would reinstall
it for free.  At this point, Mrs. Dumler told Davidson she only wanted to deal
with Lupo.   

Further negotiations ensued between Mr. Dumler and Davidson
regarding the Dumlers= dissatisfaction and refusal to pay.  The
parties agreed that upon Quality Work undertaking  certain repairs, the Dumlers
would send Quality Work a check for the outstanding bill to date.  Although the
parties dispute whether Davidson quit or was fired, it is clear that the
agreement fell through.  Mr. Dumler claimed he stopped paying because Quality
Work Awalked off the job@ and did not uphold
its promise to start the requested repairs.  Davidson claimed he quit working
because he was Afired@ and was not
receiving payment.  Tri-Way ultimately replaced the blistered tile in the
powder room.  








In August 2002, the Dumlers sent Quality Work a check for
about $14,500.  The letter accompanying the check explained the Dumlers were
deducting approximately $4,900 for costs the Dumlers incurred to complete the
powder and master bathrooms from the $19,391.89 Quality Work claimed the
Dumlers still owed.  The Dumlers claim they later noticed that tile in both the
powder room (which had already been replaced once by Tri-Way after it
blistered) and the master bathroom was coming loose. 

Quality Work and Tri-Way filed suit for the outstanding
$4,900 in October 2002.  The Dumlers counterclaimed under the Residential
Construction Liability Act and the Deceptive Trade Practices Act and also
alleged breach of contract, breach of express and implied warranties, fraud,
negligent misrepresentation, and negligence.  After a bench trial that was
conducted in segments over a period of approximately two years, the judge
decided against Quality Work on the breach of contract claim and awarded the
Dumlers $3,000 in actual damages and $10,000 in attorney=s fees.[2]

The Dumlers raise three issues on appeal.  In their first
issue, the Dumlers complain the trial judge abused his discretion by conducting
the trial over two years.  In their second and third issues, the Dumlers
challenge the amount of attorney=s fees and damages
awarded. 

II.  Damages

Standard
of Review

The
Dumlers appeal the damages award as being against the great weight and
preponderance of the evidence.  We review a trial court=s findings for factual sufficiency
under the same standards applied in reviewing the evidence supporting a jury=s answer.  Catalina v. Blasdel,
881 S.W.2d 295, 297 (Tex. 1994).  In reviewing a factual sufficiency challenge,
we must consider all the evidence in the record, both supporting and contrary
to the judgment.  Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d
442, 445 (Tex. 1989).  After weighing all the evidence, the court should set
aside the verdict only if the evidence is so weak as to be clearly wrong and
manifestly unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).  








As the trier of fact in a bench trial, the trial judge is the
sole evaluator of the witnesses= credibility and the weight of their
testimony.  Peter v. Ogden Ground Servs. Inc., 915 S.W.2d 648, 649 (Tex.
App._Houston [14th
Dist.] 1996, no writ).  The
trial court may draw reasonable inferences from the evidence, and the court=s findings may not be disregarded if
the record contains some evidence of probative value from which those inferences
may be drawn.  Id. at 649B50.  When, as here, no findings of
fact or conclusions of law are requested or filed, we imply all necessary
findings in support of the trial court=s judgment.  Holt Atherton Indus.,
Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992).  However, because a reporter=s record has been provided, the
implied findings may be challenged for factual insufficiency the same as jury
findings or a trial court=s findings of fact.  Roberson v. Robinson, 768 S.W.2d
280, 281 (Tex. 1989).  We must affirm the judgment on any theory of law that
finds support in the evidence.  Worford v. Stamper, 801 S.W.2d 108, 109
(Tex. 1990).

Analysis

The ultimate goal in measuring damages for a breach of
contract claim is to provide just compensation for any loss or damages actually
sustained as a result of the breach.  Mays v. Pierce, 203 S.W.3d 564, 577 (Tex. App.CHouston [14th
Dist.] 2006, pet. denied).  The normal measure of damages in a breach of contract case is the benefit
of the bargain, the purpose of which is to restore the injured party to the
economic position it would have been in had the contract been performed.  Id. 
The
party seeking to recover the cost of completion or repairs bears the burden of
showing those costs were reasonable and necessary.  Mustang Pipeline Co. v.
Driver Pipeline Co., 134 S.W.3d 195, 200 (Tex. 2004).  To establish that
repairs are necessary and reasonable, the magic words Areasonable@ and Anecessary@ need not be used;
the injured party need only present sufficient competent evidence so that the
trier of fact is justified in concluding that the repairs are necessary and
that the costs of repair are reasonable.  Jacobs v. Danny Darby Real Estate,
Inc., 750 S.W.2d 174, 174 (Tex. 1988). 








The
trial court awarded the Dumlers $3,000 for breach of contract damages without
specifying whether the damages related to the cost of repairing the powder room
or the master bathroom.  The Dumlers contend the damages award is against the
great weight and preponderance of the evidence and that the evidence supports
an award upwards of $31,000.  Quality Work responds that the damages award is
consistent with the evidence presented at trial.  We agree.

The
Dumlers presented expert testimony that the loose tile in the powder room
required repair.  As further evidence that the tile needed redoing, they also
attempted to show that Tri-Way had not properly followed installation
instructions.  In response,
Quality Work and Tri-Way disputed the expert=s conclusions
regarding why the tiles were coming loose.  Counsel for Tri-Way elicited
testimony from Lupo that he had correctly followed instructions, had not
observed the blistered tile coming loose when he went to replace it, and had
laid the present tile (which was now coming loose) in the same manner as the
blistered tile (which did not come loose).  Both sides presented evidence that between $2,400 and $4,200 was a reasonable cost for repairing the powder room
tile.[3]

After
reviewing the evidence, we conclude the trial court=s implied finding that the Dumlers
proved reasonable and necessary repairs in the amount of $3,000 to the powder
room tile is supported by factually sufficient evidence.  The trial court heard
conflicting testimony regarding the necessity of repairing the powder room.  As
the sole judge of the credibility of the witnesses and the weight to be given
their testimony, the trial court could have chosen to resolve the conflicting
testimonies in the Dumlers= favor.  See McGalliard v. Kuhlmann, 722 S.W.2d 694,
697 (Tex. 1986) (factfinder may resolves inconsistencies in testimony and
believe one witness over another).  Moreover, the award of $3,000 fell within
the range of repair costs submitted by each side, and estimates of repair costs
submitted by both parties that approximate the actual damages awarded by a
trial court support the reasonableness of such repairs.  See Hernandez v.
Lautensack, 201 S.W.3d 771, 777 (Tex. App.CFort Worth 2006,








pet. denied) (where damage
award fell within range of costs testified to by each side, such testimony was
some evidence supporting jury award for reasonable cost of repairs).  

We
further conclude the trial court=s implied finding
that the Dumlers failed to demonstrate reasonable and necessary repairs to the
master bath tile is supported by the evidence.  The Dumlers presented expert
testimony regarding the substandard quality of work in the master bathroom.  In
support of their argument that the evidence proves $30,000 in reasonable
repairs to the master bath, the Dumlers point to Davidson=s testimony. 
Davidson testified he charged the Dumlers around $30,000 for installation of
the master bath tile and that he had never sent out a bill that he believed was
unreasonable.[4] 
From this testimony, the Dumlers infer that since redoing the master bath tile
should cost at least as much as the original job, then logically $30,000 is a
reasonable cost for repairs to the master bath.  The Dumlers also submitted
quotes from outside contractors estimating repairs to the master bathroom at
upwards of $30,000. 








The trial judge could have chosen to disbelieve the Dumler=s expert and to
disagree with the Dumlers= interpretation of Davidson=s testimony,
leaving no evidence on the necessity of repairs to the master bathroom.  See
McGalliard, 722 S.W.2d at 697 (trier of fact is afforded considerable
discretion in evaluating opinion testimony on issue of damages).  The Dumlers
submitted estimates from the outside contractors.  However, there was no direct
testimony regarding what repair costs to the master bathroom, if any, were
reasonable, and this court has held that invoices alone, without testimony on reasonableness,
will not suffice to prove the repairs were reasonable.  See Allright Inc. v.
Lowe, 500 S.W.2d 190, 192 (Tex. Civ. App.CHouston [14th
Dist.] 1973, no writ) (receipted bills alone are insufficient to show amounts
paid were reasonable); cf. Carrow v. Bayliner Marine Corp., 781 S.W.2d
691, 694B95 (Tex. App.CAustin 1989, no
writ) (record contained
some evidence of reasonableness of repairs where expert testified to his
estimate of what it would cost to make repairs).  Thus, although the Dumlers
presented some evidence on master bath repairs, the trial court could have
concluded the Dumlers failed to demonstrate reasonable and necessary repairs of
$30,000 to the master bath.  See Ebby Halliday Real Estate v. Murnan,
916 S.W.2d 585, 589B90 (Tex. App.CFort Worth 1996,
writ denied) (sustaining no evidence challenge to damages award, stating that
although evidence showed plaintiffs believed repairs were necessary, with no
evidence that specific work done was necessary and no testimony that costs
spent on repairs were reasonable, jury was left to speculate).  Because the
Dumlers did not show a reasonable and necessary amount to repair the master
bath, we conclude the trial judge was justified in impliedly awarding zero
damages for this.

We hold that the evidence is factually sufficient to
support the trial court=s implied finding of $3,000 for reasonable
and necessary repairs to the powder room tile.  Further, we do not find the
trial court=s implied finding that the evidence failed to support
an award of damages for repairs to the master bathroom so contrary to the great
weight and preponderance of the evidence as to be clearly wrong and manifestly
unjust.  We overrule the
Dumlers= third issue.

III.  The Course and Conduct of the Trial

We turn now to the Dumlers= first issue. 
They argue that conducting the trial intermittently over a period of more than
two years constituted an abuse of discretion that prejudiced them and resulted
in memory lapses on the judge=s part, as evidenced by an arbitrary and
unreasonable damages award.  Quality Work responds that the trial court acted
within its discretion, and even if it did not, by failing to timely object[5]
to the manner in which the judge conducted the trial, the Dumlers waived error
and may not now raise the issue on appeal.  We agree that error, if any, was
waived.








To
preserve error, a timely, specific objection must be made.  Tex. R. App. P. 33.1(a).  The
requirement to act timely encompasses not only the objection itself but also
all grounds allegedly supporting it.  Both the objection and all legal bases
for it must be timely asserted. Hoxie Implement Co. v. Baker, 65 S.W.3d
140, 145 (Tex. App.CAmarillo 2001, pet. denied) (citing Credille v. State,
925 S.W.2d 112, 115B16 (Tex. App.CHouston [14th Dist.] 1996, writ ref=d)).  An objection is considered
timely urged when it is asserted at the earliest opportunity, id. at
152, or interposed at a point in the proceedings in which the trial court has
an opportunity to cure any alleged error, Brown v. Pittsburgh Corning Corp.,
909 S.W.2d 101, 104 (Tex. App.CHouston [14th Dist.] 1995, writ denied).  Raising the
objection and grounds for the first time in a motion for new trial does not
satisfy the contemporaneous objection rule if the complaint could have been
urged earlier.  St. Paul Surplus Lines v. Dal‑Worth Tank Co., 974
S.W.2d 51, 53 (Tex. 1998). 

Trial
began on February 19, 2004 and lasted for one day.  Testimony resumed for a
second day five months later on August 4, 2004.  At the close of testimony that
day, the judge said, AWe=re wrapping up for this evening. You=ll be notified when we reset it.  I
have no idea when that will be.@  The Dumlers raised no objection to this announcement. 
Testimony resumed for the third and last day on April 27, 2005.  The judge
concluded the day by saying,

I=m asking you lawyers to take a pause again.  Come back
next year B no.  As long [or] as little time [as] the lawyers
take when they review the records, what=s
been admitted into evidence, everything was here. . . . Kind of clean up, if
necessary, if everybody agrees on that.  It could be tomorrow, it could be a
week from now.

Again, the Dumlers raised
no objection.  Closing arguments were held in the judge=s chambers four months later, but no
court reporter was present to record the arguments.  The trial court issued its
ruling eight months after closing arguments.  The Dumlers objected to the time
delays for the first time in their motion for a new trial.








Objecting
to the trial schedule during the course of the proceedings would have given the
trial court opportunity to cure any alleged error.  By waiting until after
judgment was entered to object, the Dumlers= objection was not timely.  Thus,
they waived any error with respect to this issue.  See Daily v. Wheat, 681 S.W.2d 747,
758 (Tex. App._Houston [14th Dist.] 1984, writ ref=d n.r.e.)
(appellant waived issue where she did not complain of six‑person jury
limitation until motion for new trial); cf. Employers Ins. of Wausau v. Horton, 797 S.W.2d
677, 680 (Tex. App._Texarkana 1990, no writ) (vacated pursuant to settlement) (appellant
preserved error by voicing objection to continuing trial late into the evening,
on grounds that jurors were tired, at time judge informed parties they would
have to stay late); see also Pittsburgh Corning, 909 S.W.2d at 104
(party cannot wait until trial is finished and then seek to reverse an
unfavorable verdict by complaining of an error which the trial court could have
corrected had it been timely raised).  

Moreover,
the Dumlers have failed to show any prejudice.  To reverse a judgment on the
ground of judicial misconduct, we must find both judicial impropriety and
probable prejudice to the complaining party.  Bott v. Bott, 962 S.W.2d
626, 631 (Tex. App._Houston [14th Dist.] 1997, no pet.).  The Dumlers= only argument regarding prejudice is
that the Astarting and stopping of the trial resulted in memory lapses on behalf of
the judge as well as an arbitrary and unreasonable damages award.@  We have already determined the
trial court acted within its discretion with regard to the damages award. 
Further, allegations that the judge did not remember the evidence are unfounded
in the record.  At the start of the second day of trial, five months after the
first day, the judge stated, Anot only do I actually have a real recollection, but the
attorneys have been in my office earlier, and they were kind of reminding me.@  And at the conclusion of the third
day of testimony, the judge attempted to reassure the attorneys about his
memory of the case: AWhat I want to make sure most of all, ya=ll don=t feel like, because of this being so
disjointed, my ruling_I want to make sure I remember distinctly the things I need to.@  The trial judge gave the attorneys
the opportunity to make closing arguments to emphasize significant evidence. 
The Dumlers have not shown any specific instance of the trial judge suffering a
prejudicial memory lapse, and the record shows the judge was actively working
to ensure he remembered the details.  We therefore overrule the Dumlers= first issue.








IV. Attorney=s Fees

In their second issue, the Dumlers claim the trial court
abused its discretion by rendering an arbitrary and unreasonable award of attorney=s fees.  The trial
court awarded $10,000 in attorney=s fees, but the
Dumlers claim they are entitled to an award of at least $30,000.  

We first address Quality Work=s contention that
the Dumlers waived attorney=s fees under section 38.001.  See Tex. Civ. Prac. & Rem. Code Ann. ' 38.001 (Vernon
1997).  In their amended answer, the Dumlers specifically requested attorney=s fees under
sections 10.001 and 10.004 Civil Practice and Remedies Code, which pertain to
sanctions for filing frivolous pleadings.  See id. '' 10.001, 10.004
(Vernon 1997).  The pleadings also request attorney=s fees in the
general prayer for relief.  Section 38.001(8) allows recovery of reasonable
attorney=s fees when a
party prevails on a breach of contract claim.  Id. ' 38.001(8).  The
judgment awarded the Dumlers actual damages for breach of contract and
reasonable attorney=s fees in the amount of $10,000 for
prosecution of the case. 

Quality Work argues that by failing to plead for attorney=s fees under
section 38.001, the Dumlers waived any claim for attorney=s fees under that
section.  Alternatively, Quality Work contends that even if the Dumlers did not
waive their right to attorney=s fees under section 38.001, they did not Apresent@ their claim as
required by section 38.002.[6]








In effect, by arguing the Dumlers waived any right to
attorney=s fees under
section 38.001(8) and thus were not even entitled to the $10,000 the trial
court awarded, Quality Work seeks to alter the trial court=s judgment.  A party seeking to alter the trial
court=s judgment must file a notice of
appeal.  Tex. R. App. P. 25(c); Walling
v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993).  Because Quality Work did not file a notice of appeal, it waived
this challenge.  See
Lubbock County  v. Trammel=s Lubbock Bail Bonds, 80 S.W.3d 580, 584 (Tex. 2002)
(county seeking to alter trial court=s judgment could not appeal appellate
decision to supreme court due to failure to file notice of appeal).

Quality
Work also waived error with regard to its Apresentment@ argument.  To recover attorney=s fees under section 38.001, the
claimant must present the claim to the opposing party, who then has thirty days
to tender payment.  See Tex. Civ. Prac. & Rem. Code Ann. ' 38.002(2).  Quality Work raises this
argument for the first time on appeal.  Because it did not raise this claim to
the trial court, Quality Work failed to preserve error on presentment.  See Tex. R. App. P. 33.1(a); Evans
Cooperage of Houston, Inc. v. Port Drum Co., No. C14‑92‑00966‑CV,
1994 WL 7243, at *2 (Tex. App._Houston [14th Dist.] Jan. 13, 1994, writ denied) (not
designated for publication).

We turn
now to the Dumlers= contention that the award of $10,000 in attorney=s fees, rather than $30,000,
constitutes an abuse of discretion.  We review the trial court=s decision to award attorney=s fees for abuse of discretion.  Oake
v. Collin County, 692 S.W.2d 454, 455 (Tex. 1985).  An award of reasonable
attorney=s fees must be supported by some
evidence.  Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex.
1991).  The amount and reasonableness of attorney=s fees is a question of fact
involving several intangible factors.  Mack v. Moore, 669 S.W.2d 415,
419B20 (Tex. App_Houston [1st Dist.] 1984, no writ). 
In this case, the trial court was the trier of fact with regard to the
reasonableness and amount of the attorney=s fees and must take into account
various factors such as the nature and complexity of the case, the nature of
the services provided by counsel, the time required for trial, the amount of
money involved, the client=s interest that is at stake, the responsibility imposed upon
counsel, and the skill and expertise required.  Ragsdale v. Progressive
Voters League, 801 S.W.2d 880, 881 (Tex. 1990).  The judge could also have
drawn on his own expertise in deciding how much to award.  Mack, 669
S.W.2d at 420.  








The only
evidence on attorney=s fees offered were invoices the Dumlers= attorney billed.  The trial court
considered all the evidence and awarded $10,000 in attorney=s fees.  Because
the trial court had before it sufficient evidence regarding the services
provided, the amount of money involved, the time required for trial, and the
complexity of the case, we cannot say that this award was so arbitrary or
unreasonable as to require reversal.  See Dail v. Couch, 99
S.W.3d 390, 391 (Tex. App.CCorpus Christi 2003, no pet.) (trial court
had discretion to reduce attorney=s fees from the
$8,000 prayed for to $2,500, despite uncontroverted expert testimony); Fonmeadow
Prop. Owners= Ass=n v. Franklin, 817 S.W.2d 104,
105 (Tex. App.CHouston [1st Dist.] 1991, no writ) (attorney=s fees award
affirmed, even though party offered proof of higher amount at trial, because
trial judge could find some fees claimed were unreasonable or unwarranted or
other circumstances making an award in amount prayed for wrong).  We conclude
the trial court did not abuse its discretion in awarding $10,000 attorney=s fees.  We
overrule the Dumlers= second issue. 

We affirm the trial court=s judgment. 

 

/s/      Leslie B. Yates

Justice         

 

Judgment rendered and Memorandum
Opinion filed January 10, 2008.

Panel consists of Justices Yates,
Fowler, and Guzman.









[1]  Tri-Way did not file an appellee brief.





[2]  At the close of the third day of testimony, the trial court sustained
Quality Work=s request for a directed verdict on
the claims for fraud and misrepresentation.  The trial court did not rule on
the Dumlers= other causes of action.  Neither
party requested and the trial court did not enter findings of fact or
conclusions of law.





[3]  The Dumlers=
estimates ranged from $3,455 to $4,190.  Davidson testified that $2,400 was reasonable to repair the tile
walls and $1,000 to $1,500 was reasonable for repairing the tile floor
(excluding the cost of materials).





[4]  Quality Work charged $17,750 to install tile in the master bathroom and
another $11,600 for molding and trim work.





[5]  The Dumlers first objected to the manner in which
the trial was being conducted in their motion for new trial.





[6]  To recover attorney=s fees under this chapter:

(2) the claimant must present the claim to the
opposing party or to a duly authorized agent of the opposing party; and

(3) payment for the just amount owed must not have
been tendered before the expiration of the 30th day after the claim is
presented. 

Tex. Civ. Prac. & Rem.
Code Ann. ' 38.002 (Vernon 1997).